FILED

JAN 24 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

United States Commodity Futures Trading
Commission,

      Plaintiff,

vs.

Diego Mariano Rolando a/k/a Roclerman and
ROC d/b/a IA Trading.com Inc.,

      Defendant.

Case No.:

08cv64 (PCD) PV

(PROPOSED) PLAINTIFF'S *EX PARTE*
EMERGENCY STATUTORY RESTRAINING
ORDER, APPOINTMENT OF TEMPORARY
RECEIVER, FOR EXPEDITED DISCOVERY
AND TO SHOW CAUSE REGARDING
PRELIMINARY INJUNCTION

---

This matter came before the Court for hearing on January 15, 2008, on Plaintiff's

*Ex Parte* Emergency Motion for a Statutory Restraining Order, Appointment of

Temporary Receiver, Expedited Discovery, Preliminary Injunction, and Other Equitable

Relief (Motion). The Court, having considered the Motion, the memorandum in support

thereof, and all other evidence presented by Plaintiff, and having heard the arguments of

Plaintiff's counsel, finds that:

1.    This Court has jurisdiction over the parties and the subject matter of this

action pursuant to Section 6c of the Commodity Exchange Act, as amended (Act), 7

U.S.C. § 13a-1 (2002).

2.    Venue lies properly within this District pursuant to Section 6c(e) of the

Act, 7 U.S.C. § 13a-1(e).

3.    There is good cause to believe that Defendant Diego Mariano Rolando

a/k/a Roclerman and ROC—individually and d/b/a IATrading.com Inc. (IA Trading)

I Hereby certify that the forgoing
is a true copy of the original document
on file. Date: 1/24/08
Roberta D. Tabora
Clerk
By Deputy Clerk

08cv536
JUDGE ST. EVE
MAGISTRATE JUDGE KEYS

(collectively, Defendant)—has engaged, is engaging, and is about to engage in acts and practices constituting violations of the Act, 7 U.S.C. §§ 1, *et seq.*

4.    There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for customers in the form of monetary redress will occur from the sale, transfer, assignment, or other disposition by Defendant of assets or records unless Defendant is immediately restrained and enjoined by Order of the Court.

5.    Good cause exists for the freezing of assets owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendant, including but not limited to customer accounts held at Interactive Brokers, LLC (hereinafter Defendant's Assets), and for entry of an order prohibiting Defendant his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendant, including any successor thereof, from destroying records and/or denying agents of the Commission access to inspect and copy records to ensure that Commission representatives have immediate and complete access to those books and records.

6.    Good cause exists for the appointment of a Temporary Receiver to take control of Defendant's Assets in order to preserve assets, investigate and determine customer claims, determine unlawful proceeds retained by Defendant and amounts due to customers as a result of his alleged violations, and distribute remaining funds under the Court's supervision.

7.    Good cause exists for the Plaintiff to conduct expedited discovery in order to determine the full extent of Defendant's alleged wrongdoing, locate Defendant's other

2

customers, identify customers' funds and other of Defendant's Assets, and clarify the source of various funds.

8.      Weighing the equities and considering the Commission's likelihood of success in its claims for relief, the issuance of a statutory restraining order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

9.      The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure (FRCP) 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

10.     "Assets" mean any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, direct or indirect control, and wherever located, including but not limited to:  chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at financial institutions), credits, receivables, lines of credit, contracts including spot and futures or option contracts, insurance policies, and all cash.

11.     "Defendant" shall mean and refer to not only Diego Mariano Rolando a/k/a Roelerman and ROC—individually and d/b/a IATrading.com Inc.—but also to any

3

d/b/a, successor, or other entity owned, controlled, managed, or held by, on behalf of, or

for the benefit of Diego Mariano Rolando or any of the aforementioned individuals,

including, but not limited to, IATrading.com and Roclerman.com.

## RELIEF GRANTED

### I. Order Against Transfer, Dissipation, and Disposal of Assets

### IT IS HEREBY ORDERED that:

12.    Defendant and his agents, servants, employees, assigns, attorneys, and

persons in active concert or participation with the Defendant, including any successor

thereof, and persons in active concert or participation with him, who receive actual notice

of this Order by personal service or otherwise, are restrained and enjoined from directly

or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing,

loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise

disposing of any of Defendant's Assets, wherever located, including Defendant's Assets

held outside the United States, except as provided in Section II of this Order, or as

otherwise ordered by the Court.  The assets affected by this paragraph shall include both

existing assets and assets acquired after the effective date of this Order.

13.    Defendant is restrained and enjoined from directly or indirectly opening or

causing to be opened any safe deposit boxes titled in the name of or subject to access by

Defendant.

### II. Accounting and Transfer of Funds and Documents

IT IS FURTHER ORDERED, that within ten (10) business days following the

service of this Order, Defendant shall:

4

14.     Provide the Commission with a full accounting of all of Defendant's Assets, inside and outside of the United States, from September 1, 2005 to the date of this Order;

15.     Transfer to the territory of the United States, to the possession, custody, and control of the Temporary Receiver, all of Defendant's Assets (other than real property) located outside the United States; and

16.     Provide the Commission access to all records of Defendant held by financial institutions located within or outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order.

### III.     Directives to Financial Institutions and Others

IT IS FURTHER ORDERED, pending further Order of this Court, that any financial or brokerage institution, business entity, or person that holds or has held, controls or has controlled, or maintains or has maintained custody of any of Defendant's Assets at any time since September 1, 2005, shall:

17.     Prohibit Defendant and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of Defendant's Assets, except as directed by further Order of the Court;

18.     Deny Defendant and all other persons access to any safe deposit box that is: (a) owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendant, either individually or jointly; or (b) otherwise subject to access by Defendant;

19.     Provide counsel for the Commission, within five (5) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of

5

each and every account or other asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendant (as defined above), either individually or jointly; (b) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (c) the identification of any safe deposit box that is owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendant, either individually or jointly, or is otherwise subject to access by Defendant; and

20.     Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## IV.    Maintenance of Business Records

**IT IS FURTHER ORDERED that:**

21.     Defendant and his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendant, including any successor thereof, and all other persons or entities who receive notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, directly or

6

indirectly, any documents that relate to the business practices, or business or personal finances of Defendant.

## V.    Inspection and Copying of Books and Records

### IT IS FURTHER ORDERED that:

22.    Representatives of the Commission shall be immediately allowed to inspect the books, records, and other documents of Defendant and his agents, including, but not limited to, electronically stored information, tape recordings, and computer discs, wherever they may be situated and whether they are in the person of Defendant or others, and to copy said documents, information and records, either on or off the premises; and

23.    Defendant and his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendant, including any successor thereof, who receive actual notice of this Order by personal service or otherwise, including facsimile transmission, shall cooperate fully with the Commission to locate and provide to representatives of the Commission all books and records of Defendant, wherever such books and records may be situated, and to locate and provide to representatives of the Commission information regarding the whereabouts of Defendant.

## VI.    Order Appointing Temporary Receiver

### IT IS HEREBY ORDERED that:

24.    The Court appoints *DANIEL ALONSO* as the Temporary Receiver, with full powers of an equity receiver.  The Court makes this appointment of a Temporary Receiver after having duly considered the qualifications and experience of said Temporary Receiver and determining said Temporary Receiver qualified.  The

7

Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this Order.

25.     The "Receiver Estate" shall consist of all Defendant's Assets that are under the Temporary Receiver's possession, custody, or control or, per this Order, should be under the Temporary Receiver's possession, custody, or control.  No person holding or claiming any position of any sort with the Receiver Estate shall possess any authority to act by or on behalf of any of the Receiver Estate, except as authorized by the Temporary Receiver.

26.     The Temporary Receiver shall have and possess all powers and rights to administer and manage the Receiver Estate in the Temporary Receiver's discretion, including assets held by third parties that are subject to the freeze, and take such action as approved by the Court, as described below:

a. The Temporary Receiver shall make a determination of value of the Receiver Estate, including, but not limited to, making a determination of the account values for all customer accounts controlled or managed by Defendant at Interactive Brokers, LLC.

b. The Temporary Receiver shall take exclusive custody, control, and possession of all Defendant's Assets.  Further, the Temporary Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, mail, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Defendant, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Defendant.  All

8

accounts controlled, managed, or held by Defendant at IB shall be under the Temporary Receiver's control, but shall remain in the possession of IB until further order of the Court;

 c. The Temporary Receiver shall preserve, hold and manage the Receiver Estate, and perform all acts necessary to preserve the value of the Receiver Estate, in order to prevent any loss, damage or injury to customers;

 d. The Temporary Receiver shall choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

 e. The Temporary Receiver shall issue subpoenas to obtain documents and records pertaining to the Receiver Estate, and conduct discovery in this action on behalf of the Receiver Estate; and

 f. The Temporary Receiver shall open one or more bank accounts as designated depositories for funds of the Defendant. The Receiver shall deposit all funds of the Defendant in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts.

 27. The Temporary Receiver's powers and rights to administer and manage the Receiver Estate as described above in paragraph 26 shall be limited to Defendant's Assets located within the United States and Defendant's Assets that are transferred to the United States per paragraph 15 of this Order, until further order of this Court.

 28. The Temporary Receiver is authorized to provide actual notice of the entry of this Order to any person, agency or entity the Temporary Receiver deems appropriate

by delivery of a copy of the Order by hand, U.S. Mail, International Mail, express mail, courier service, facsimile, e-mail or any other reasonable means of delivery.

29.     The Temporary Receiver shall provide an initial report to the Court and the Parties by _February 15, 2008_, subject to such reasonable extensions as the Court may grant, that details a) all Defendant's Assets (including the location of such assets); and b) the account values for all customer accounts controlled or managed by Defendant at Interactive Brokers, LLC. The Temporary Receiver shall provide additional reports as he deems necessary in the course of fulfilling his duties set forth herein or as requested by the Court.

30.     The Temporary Receiver and all personnel hired by the Temporary Receiver shall be entitled to reasonable compensation for the services they render from Defendant's Assets, as approved by the Court.

31.     All persons, including but not limited to the Defendant and his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the defendant, including any successor thereof, and any persons who receive actual notice of this Order by personal service or otherwise, are enjoined from in any way interfering with the operation of the Receiver Estate or in any way disturbing the assets of the Receiver Estate and from filing or prosecuting any actions or proceedings which involve the Temporary Receiver or which affect the Receiver Estate, specifically including any proceeding initiated pursuant to the United States Bankruptcy Code, except with the prior permission of this Court.

32.     Defendant and his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendant, including any successor

10

thereof, and any persons who receive actual notice of this Order by personal service or otherwise, shall cooperate in every way with the Temporary Receiver and others working with the Temporary Receiver in the administration of the Receiver Estate and provide such information related to the Receiver Estate as the Temporary Receiver and those working with the Temporary Receiver reasonably request.

33.    **IT IS FURTHER ORDERED** that absent express permission and leave by this Court, all actions by any creditors and other persons seeking money damages or other relief from the Receiver Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed.  Further, all persons having notice of this Order, including creditors and others seeking money damages or other relief from the Receiver Estate, and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are restrained from doing anything to interfere with the Temporary Receiver performance of his duties and the administration of the Receiver Estate.  Accordingly, all such persons are enjoined from engaging in any self-help, including set-offs, and from filing or prosecuting any actions or proceedings which involve the Temporary Receiver or which affect the Receiver Estate, specifically including any proceeding initiated pursuant to the Untied States Bankruptcy Code, except with prior permission of this Court.  Moreover, any such actions that are so authorized shall be filed in this Court.

### VII.  Order Granting Expedited Discovery

**IT IS HEREBY ORDERED that:**

34.    The Commission and Temporary Receiver may conduct expedited discovery, removing the prohibition upon discovery before the early meeting of counsel pursuant to FRCP 26(f), in accordance with FRCP 26(d), and removing the prohibition upon immediate commencement of depositions pursuant to FRCP 30(a)(2)(C).

35.    The Commission and Temporary Receiver may conduct expedited discovery to enable the Commission to fulfill its statutory duties and protect investors from further loss or damage.  This expedited discovery will allow the Commission and Temporary Receiver to determine the full extent of Defendant's alleged wrongdoing (including, but not limited to, the possible involvement of others), locate Defendant's other customers, identify customers' funds and other of Defendant's Assets, and clarify the sources of various funds.

### VIII.  Bond Not Required of Plaintiff

**IT IS FURTHER ORDERED that:**

36.    Plaintiff Commission is an agency of the United States of America and, accordingly, need not post a bond.

### IX. Order to Show Cause

**IT IS FURTHER ORDERED that:**

37.    Defendant shall appear before this Court on the _2 7 th_ day of _January_, 2008, at _3:00_, _P_.m., before the Honorable _Mark Kravitz_ at the United States Courthouse for the District of Connecticut, _New Haven_, _____, CT _____ to show cause,

12

if there be any, why an Order for Preliminary Injunction should not be granted to prohibit further violations of the Act and why the other relief requested should not be granted pending trial on the merits of this action.

38.     Should any party wish to file a memorandum of law or other papers in opposition to Plaintiff's Motion for a Preliminary Injunction, all papers shall be filed on or before _____January 22_____, 2008 and served via facsimile or overnight delivery no later than ___January 18____, 2008.

### X.  Service

**IT IS FURTHER ORDERED** that:

39.     Copies of this Order may be served by any means, including facsimile transmission, upon any entity or person that may have possession, custody, or control of any documents or Defendant's Assets that may be subject to any provision of this Order, and, additionally, that Jo Mettenburg, Kenneth McCracken, Michelle Bougas, Rick Glaser, and Charles Marvine are specially appointed by the Court to effect service. Further, service of the Summons, Complaint, or other process may be effected by any Commission representative, the Temporary Receiver or any of his representatives, any U.S. Marshal or deputy U.S. Marshal, or in accordance with FRCP 4.

## XI.  Force and Effect

**IT IS FURTHER ORDERED** that this Order shall remain in full force and

effect until further order of this Court and that this Court retains jurisdiction of this matter

for all purposes.

**IT IS SO ORDERED**, at _New Haven_, Connecticut on the _15th_ day of

_January_, 2008 at _3:15 P_.m.

_____
UNITED STATES DISTRICT JUDGE
DISTRICT OF CONNECTICUT

**CONSENT TO RELEASE OF FINANCIAL RECORDS**

I, Diego Mariano Rolando, a resident of Argentina, do hereby direct any bank, trust, or other financial company, as well as any of its officers, employees, and agents, at which I have or had a bank account or other financial account of any kind operated under my name or any other name (including any corporation or other entity) for which I am or was authorized to draw on the account, to disclose all information and deliver copies of all documents of every nature in the bank's, trust's, or other financial company's possession or control which relate to said bank or other financial accounts to any attorney or investigator of the United States Commodity Futures Trading Commission or to the Temporary Receiver or his representatives, and to give evidence relevant thereto, in the matter of Commodity Futures Trading Commission v. Diego Mariano Rolando, et al., Case No. _____, now pending before the United States District Court for the District of Connecticut, and this shall be irrevocable authority for so doing. This direction is intended to apply to not only the laws of the United States, but also to the law of countries other than the United States which restrict or prohibit the disclosure of bank information without the consent of the holder of the account, and shall be construed as consent with respect thereto, and the same shall apply to any of the bank accounts or other financial accounts for which I may be a relevant principal.


Dated:_____          _____
                                Signature


15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

United States Commodity Futures Trading
Commission,

        Plaintiff,

    vs.

Diego Mariano Rolando a/k/a Roclerman and
ROC d/b/a IA Trading.com Inc.,

        Defendant.

Case No.:

## 308 CV 00064 MRK

COMPLAINT FOR INJUNCTIVE AND
OTHER EQUITABLE RELIEF AND FOR
CIVIL MONETARY PENALITES
PURSUANT TO THE COMMODITY
EXCHANGE ACT

### I.  SUMMARY

1.  From September 2005 through the present, defendant Diego Mariano Rolando a/k/a Roclerman and ROC —individually and d/b/a IA Trading.com Inc. (IA Trading) (collectively, Defendant) and using the websites IATrading.com and Roclerman.com—engaged in a fraudulent scheme in which he solicited approximately $43.8 million from 420 customers residing in the United States and around the world.  Defendant provided these customers with fraudulent account statements that misrepresented the value of and trading activity in customers' accounts.  Further, Defendant defrauded customers by trading tens of millions of dollars of commodity futures contracts (futures) and options on commodity futures contracts (options) in customer accounts without customer authorization.  In addition, to hide his fraud, Defendant provided false customer contact information and false third-party trading advisor names to the commodity firm at which he established customers' accounts.  Also, in the course of Defendant's fraudulent scheme, he provided customers with written materials containing material

I Hereby certify that the forgoing
is a true copy of the original document
on file. Date: 1/24/08
Roberta D. Tabora
Clerk
By_____
Deputy Clerk

and omissions about how customers' funds would be invested and about the roles of IA Trading and the firm through which trades were to be made.

2. By virtue of this conduct and the further conduct described herein, Defendant has engaged, is engaging, and/or is about to engage in fraudulent acts and practices that violate Sections 4b(a)(2)(i)-(iii) and 4c(b) of the Commodity Exchange Act, as amended (the Act), 7 U.S.C. §§ 6b(a)(2)(i)-(iii) & 6c(b) (2002), and Sections 33.10(a)-(c) of the United States Commodity Futures Trading Commission's Regulations (Regulations), 17 C.F.R. § 33.10(a)-(c) (2007).

3. Accordingly, the United States Commodity Futures Trading Commission (CFTC) brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), to enjoin Defendant's unlawful acts and practices and to compel Defendant's compliance with the Act and Regulations. In addition, the CFTC seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, pre-judgment and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

4. Unless restrained and enjoined by the Court, Defendant is likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices as more fully described below.

## II.    JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1, which authorizes the CFTC to seek injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to

engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

6. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendant transacted business in the District of Connecticut and certain of the transactions, acts, practices, and courses of business alleged occurred, are occurring, and/or are about to occur within this District.

### III.    THE PARTIES

7. **Plaintiff United States Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et. seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et. seq.* The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

8. Upon information and belief, **Defendant Diego Mariano Rolando a/k/a Roclerman and ROC and d/b/a IA Trading**, is a citizen of Buenos Aires, Argentina. Since at least 2005, Defendant individually and d/b/a IA Trading—has been actively trading in the U.S. financial markets through accounts he held and/or controlled at Interactive Brokers LLC (IB), a futures commission merchant and broker-dealer located in Greenwich, Connecticut. Neither Defendant nor IA Trading has ever been registered with the CFTC. While IA Trading is not incorporated in the United States, IATrading.com lists a Scarsdale, New York address on its domain registration.

### IV.    FACTS

#### A.    Background.

9. Defendant claims to be a financial advisor who manages a team that supervises trades using a "sophisticated system of hardware and software . . . across . . . IATrading.com Inc."

10. Since approximately 2005, Defendant has been operating an investment scheme in which he solicits others, through, among other things, the Roclerman.com and IATrading.com websites and a brochure, to open accounts with him to invest in securities. Nowhere do Defendant's solicitation materials mention futures or options. Further, at least some of Defendant's customers are referred to him by third-parties who receive a portion of Defendant's commissions for bringing him customers.

11. Between 2005 and 2007, Defendant or persons working for Defendant opened 420 customer accounts with IB in which customer funds totaling approximately $43.8 million were deposited. Currently, the equity in these accounts is approximately $23.4 million. The majority of Defendant's customers live in Argentina; although, he also has customers residing in the United States (including Puerto Rico), England, Italy, Spain, Panama, Paraguay and Venezuela.

12. In furtherance of Defendant's scheme, on or about September 9, 2005, Defendant identified himself as an independent, third-party financial advisor (advisor) to IB and completed an online application for IB to act as an executing and clearing broker for customer accounts managed by Defendant. When submitting this application, Defendant represented to IB that all information he would provide to IB regarding customers would be true and correct and that any documents Defendant would provide to IB to open customer accounts would be reviewed by customers and would be provided in an unaltered and original form. Defendant also certified to IB that he was managing less than $25 million in assets.

13. Prospective customers either logged onto IATrading.com and filled out account application forms or provided Defendant with account opening documents. It appears that some customers signed a "Trading Authorization Limited to Purchases and Sales of Securities To: IATRADING, Inc." when they completed the account opening documents.

14. After collecting the account opening information, Defendant apparently opened accounts at IB for his customers using IB's online application and associated each customer with an advisor. When opening customers' accounts with IB, Defendant provided IB with false and unauthorized digital signatures for his customers and, for at least some customers, Defendant provided IB with trading authorizations different from what customers provided to Defendant.

15. Customers typically wired funds directly to IB or sent funds to Defendant who forwarded the funds to IB. According to Defendant, customer accounts are not and were not held with any other financial firm. Customers obtained account information and had access to monthly account statements through IATrading.com.

16. Although Defendant's name appears as an advisor on only 30 customer accounts at IB, he actually controlled the trading in all 420 customer accounts. To apparently circumvent an IB policy that permits unregistered advisors to manage only a certain number of accounts and $25 million in assets, 24 different persons were identified as advisors to IB, and online applications were submitted on behalf of these advisors for IB to act as an executing and clearing broker for the accounts they purportedly managed.

**B.    Defendant Provided False Account Statements to Customers.**

17. Since at least October 2006, Defendant has been providing or has caused to be provided false account statements to customers. These false account statements misrepresent that customer funds are and were invested entirely in securities when, according to IB's records, the majority of customer funds are and were used to trade futures and options.

18. Defendant's false account statements, provided to customers through IATrading.com, also misrepresent the value of customers' accounts.

19. For example, one customer's IA Trading account statement shows a balance of $256,551.64 as of November 13, 2007 when the actual balance of the customer's account at IB was $169,082.30.

20. On or about December 4, 2007, Defendant informed IB that account statements issued by IATrading.com show accounts having a collective value of approximately $40 million. IB's records, however, show these accounts have a collective value of only approximately $23.4 million.

## C.    Defendant Engaged in Fraudulent Unauthorized Trading.

21. As part of Defendant's fraudulent scheme, upon information and belief, he never told customers that he was going to trade or had traded customer funds in futures and options. Further, upon information and belief, no customer ever authorized Defendant to trade futures or options. Moreover, it appears that the trading authorizations executed by Defendant's customers never mentioned futures or options.

22. Nevertheless, beginning in September 2005, Defendant began fraudulently trading futures with customer funds. In fact, the majority of trading in the IB accounts held or controlled by Defendant was in futures and options.

## D.    Defendant Provided False Customer Account Information to IB.

23. As part of Defendant's fraudulent scheme, Defendant caused IB to have false records about customers. As set forth in more detail below, Defendant provided IB with false contact information when opening some customer accounts, changed the mailing addresses for some customer accounts to false addresses, and listed as trading advisors on some accounts individuals whom customers had not authorized to trade their accounts.

24. When opening certain customer accounts at IB, Defendant provided false customer contact information. Further, in some cases, Defendant substantiated customer contact information using falsified documents. For example,

- One customer's account was opened at IB with an application giving an address in Argentina of "Miguel Cane 2786 DTO 2, Haedo Norte, Haedo Norte 1706" and provided an Edesur electric bill to confirm this address. In reality, this customer has never lived at this address and never submitted to Defendant or anyone associated with him a utility bill with this address. Similarly, the email and telephone numbers provided on the IB account opening documents for this customer were false.

- A second customer's account was opened at IB in August 2007 with an application giving a similar address in Argentina of "Benito Juarez 2787, Apartment 2, Haedo Norte, Argentina" and providing a MetroGas bill with the application to confirm this address. In reality, this customer lives in New York and never submitted any information to IA Trading reflecting an address in Argentina. Similarly, the email address provided on the IB account opening documents for this customer was false.

25. During 2007, IB launched a program to make customer accounts more secure. It began mailing customers computer tokens to use when logging into their customer accounts online. Defendant apparently did not want customers receiving these tokens from IB, whereby the customers would be able to examine their true account statements online through IB's website; as a result, beginning no later than August 2007, Defendant began changing his customers' addresses on their IB accounts.

-7-

26. For example, on August 6, 2007, Defendant fraudulently changed the mailing address for several IB accounts related to one customer to "Calle Tandil 7344 #3 Mataderos C1440 Argentina." Upon information and belief, this customer has never lived at or otherwise been associated with this address and never requested that any information on his account be changed.

27. Upon information and belief, Defendant has provided false contact information on at least 200 IB customer accounts. According to IB records, several customers' contact information was changed to a series of common mailing addresses. It appears that in most instances the common addresses were provided in a slightly altered form to evade IB's computerized detection system.

28. In addition, when opening certain IB customer accounts, Defendant listed trading advisors whom the customers had not authorized to trade their accounts. Upon information and belief, many customers have advisors listed on their accounts that these customers do not know. Further, it appears that Defendant fraudulently identified to IB the 24 persons listed as advisors on the customer accounts that Defendant controlled. According to Defendant, these "advisors" do not and did not make any trading decisions for these customer accounts and in many cases they are and were unaware that they are listed as advisors on any customer accounts.

**E.    Defendant Made Material Misrepresentations and Omissions to Customers.**

29. Since at least May 2006, Defendant made or caused to be made—through his brochure entitled Roclerman.com, IATrading.com, or otherwise—material misrepresentations and omissions to customers about Defendant's investment scheme.

30. The Roclerman.com brochure states "[w]e trade only high-rated stocks and indexes." This statement was untrue. By September 2005, Defendant had begun trading futures in

customer accounts. Further, the substantial majority of trading in the IB accounts held or controlled by Defendant was in futures and options.

31. Defendant also made or caused to be made material misrepresentations about IA Trading to customers. For example,

- The Roclerman.com brochure states that IA Trading is a trading platform and that IB is a clearing house. According to the brochure, "[t]he broker – IATrading.com Inc. – takes charge itself providing the platform of access to the stock market, opening the account in the clearing house and the bank . . . [t]he 'clearing house' is: IB, LLC." These statements were untrue. In the customer transactions at issue, IB served as both the executing and clearing broker. Defendant placed trades in customer accounts through IB and not through any purported IA Trading platform.

- Upon information and belief Defendant represented or caused to be represented to one or more customers that IA Trading was owned by or affiliated with IB. This statement was untrue. IB does not own or have any affiliation with IA Trading.

- Certain IATrading documents indicate that IA Trading is a company with a U.S. address of 1 Pickwick Plaza, Greenwich, Connecticut and a New York facsimile number. Upon information and belief, however, IA Trading is nothing more than a website operated by Defendant. The 1 Pickwick Plaza address is actually IB's address and IA Trading has never been authorized to use it.

## V.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

### Violations of § 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6(b)(a)(2)(i)-(iii): Fraud in Connection with Futures Contracts

32. The allegations set forth in paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. From at least September 2005 and continuing to through the present, Defendant: (i) cheated or defrauded or attempted to cheat or defraud other persons; (ii) willfully made or caused to be made to persons false reports and/or statements and willfully entered or caused to be entered for such persons false records; and (iii) willfully deceived or attempted to deceive other persons, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2), all in violation of Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii).

34. In the course of Defendant's solicitations, Defendant knowingly made material misrepresentations and omitted material facts including, but not limited to, the misrepresentations and omissions set forth in paragraphs 17 through 31 in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) & (iii).

35. As set forth in paragraphs 17 through 28, Defendant also provided or caused to be provided false customer contact and advisor information to IB so that IB would be unable to contact customers and/or inform customers of the true nature of their holdings and account values and provided customers fraudulent account statements that misrepresented the value of

-10-

customers' accounts and customers' holdings in violation of Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii).

36. Defendant engaged in the acts and practices described in paragraphs 17 through 31 knowingly or with reckless disregard for the truth.

37. Each fraudulent misrepresentation, omission, report, statement, unauthorized trade, and record made or caused to be made by Defendant, including but not limited to those specifically alleged in paragraphs 17 through 31, is alleged as a separate and distinct violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2).

## COUNT II

### Violations of § 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 33.10(a)-(c) of the Regulations, 17 C.F.R. §33.10(a)-(c): Fraud in the Sale of Options Contracts

38. The allegations set forth in paragraphs 1 through 37 are realleged and incorporated herein by reference.

39. Section 4c(b) of the Act, 7 U.S.C. § 6c(b), makes it unlawful to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade as, an "option," "privilege," "indemnity," "bid," "offer," "put," "call," "advance guaranty," or "decline guaranty," contrary to any rule, regulation, or order of the CFTC prohibiting any such transaction or allowing any such transaction under such terms and conditions as the CFTC shall prescribe.

40. Sections 33.10(a)-(c) of the Regulations, 17 C.F.R. §§ 33.10(a)-(c), make it unlawful for any person, directly or indirectly, (a) to cheat or defraud or attempt to cheat or defraud any other person; (b) to make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; (c) to deceive or attempt to deceive any other person by any means whatsoever, in or in connection with an offer to enter

-11-

into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

41. By engaging in the foregoing fraudulent acts and practices alleged in the Complaint, from at least September 2005 and continuing to through the present, Defendant (a) cheated or defrauded or attempted to cheat or defraud other persons; (b) willfully made or caused to be made to other persons false reports and/or statements and willfully entered or caused to be entered for such other persons false records; and (c) willfully deceived or attempted to deceive other persons, in or in connection with orders to make, or the making of, contracts of sale of commodity options on futures, made, or to be made, for or on behalf of any other persons, all in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 33.10(a)-(c) of the Regulations, 17 C.F.R. §§ 33.10(a)-(c).

42. Each material misrepresentation and omission, report, statement, unauthorized trade, and record made or caused to be made by Defendant, including but not limited to those specifically alleged in paragraphs 17 through 31, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Sections 33.10(a)-(c) of the Regulations, 17 C.F.R. §§ 33.10 (a)-(c).

## VI.    RELIEF REQUESTED

**WHEREFORE**, the CFTC respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

a)      An order finding that Defendant violated Sections 4b(a)(2)(i)-(iii) and 4c(b) of the Act and Sections 33.10(a)-(c) of the Regulations;

b)      An order of permanent injunctions prohibiting Defendant and any of his agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendant, including any successor thereof:

(i)     from engaging in conduct in violation of Sections 4b(a)(2)(i)-(iii) and 4c(b) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) & 6c(b), and Sections 33.10(a)-(c) of the Regulations, 17 C.F.R. §§ 33.10(a)-(c);

(ii)    from trading of any commodity interest account for himself or on behalf of any other person or entity;

(iii)   from soliciting, receiving, or accepting any funds in connection with the purchase or sale of any commodity interest contract;

(iv)    from applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2007), or acting as a principal, agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC, except as provided for in Regulation 4.14(a)(9); and

(v)     from engaging in any business activities related to commodity interest trading;

c)      An order directing Defendant, as well as any successors to Defendant, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

d)      An order directing Defendant to make full restitution to every person or entity whose funds he received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

e)      An order directing Defendant to make an accounting to the Court of all his assets and liabilities, together with all funds he received from and paid to customers and other persons in connection with transactions or purported transactions alleged in the Complaint, and all disbursements for any purpose whatsoever of funds received from or relating to the transactions alleged in the Complaint, including salaries, commissions, interest, fees, loans, and other disbursements of money and property of any kind from September 2005 to the date of such accounting;

f)      An order directing Defendant to pay a civil monetary penalty in the amount of the higher of $130,000 for each violation of the Act committed or triple the monetary gain to Defendant for each violation of the Act described herein, plus post-judgment interest;

g)      An order requiring Defendant to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

h)      Such other and further relief as the Court deems proper.


Respectfully submitted by,

John B. Hughes (Local Counsel)
Assistant United States Attorney
Chief, Civil Division
157 Church Street
New Haven, CT 06510
203-821-3700
Fax 203-773-5373
Fed Bar No. ct05289

-14-

John.hughes@usdoj.gov


Jo Mettenburg
Kenneth McCracken
Charles D. Marvine
Commodity Futures Trading Commission
2 Emanuel Cleaver II Blvd., Ste. 300
Kansas City, MO 64112
Tel: (816) 960-7744 (Mettenburg)
Tel: (816) 960-7742 (McCracken)
Tel: (816) 960-7743 (Marvine)
Fax: (816) 960-7750
jmettenburg@cftc.gov
kmccracken@cftc.gov
cmarvine@cftc.gov


Dated this _15_ day of January, 2008.